CARY WALLACE WILLIAMS, Appellant, *v.*
THE STATE OF NEVADA, Respondent.

No. 14614

May 29, 1987                                737 P.2d 508

*Robert Bruce Lindsay,* Reno, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Mills B. Lane,* District Attorney, and *Gary Hatlestad,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

Appellant Cary Wallace Williams was convicted of first degree murder. Following a penalty hearing, a three-judge panel sentenced Williams to death. Williams was also sentenced to two consecutive ten-year terms for manslaughter and burglary. Williams appealed and then petitioned the district court for post-conviction relief, which was denied. We have consolidated the appeals from the judgment of conviction and death sentence and from the denial of the petition for post-conviction relief.

### THE FACTS

On June 27, 1982, Williams broke into the home of Allen and Katherine Carlson. Once inside, Williams obtained an 8″ to 10″ knife from the Carlson kitchen and proceeded through the house. He discovered Mrs. Carlson asleep in the master bedroom. Mrs. Carlson, who was approximately eight months pregnant, was home alone. Williams approached her and stabbed her to death. The fetus died from a lack of oxygen as a result of her mother's death.

An autopsy revealed that Mrs. Carlson had thirty-eight identifiable knife wounds. There were three categories of wounds: fatal wounds, defensive wounds and small puncture wounds. The medical examiner concluded from the puncture wounds that Mrs. Carlson had been tortured before the fatal wounds were inflicted.

Williams was arrested in Los Angeles after attempting to pawn part of the jewelry stolen from the Carlson home. Subsequently, when questioned by Washoe County sheriffs Williams confessed to the murder of Mrs. Carlson and her unborn child and the burglary of the Carlsons' home.

At arraignment, Williams pleaded not guilty to the charges of murder, manslaughter and burglary. Prior to trial, Williams

changed his burglary plea to guilty. After the jury was impanelled and on the first day of trial, Williams changed his murder and manslaughter pleas to guilty. The court then canvassed Williams and accepted his guilty pleas. Williams was tried before a three-judge panel. At the penalty hearing, the three-judge panel reviewed Williams' guilt and sentenced him to death. He also received two consecutive ten-year terms for manslaughter and burglary.

Williams petitioned the court for post-conviction relief in order to withdraw his pleas of guilty to murder and manslaughter. He claimed that (i) he had been denied effective assistance of counsel at trial; (ii) the district court erred in accepting his guilty pleas; (iii) the district court erred in refusing to suppress his confession and (iv) in denying his motion to change venue; (v) the death qualification of the jury violated his Sixth Amendment rights; and (vi) the Nevada death penalty is racially and economically biased.

The district court denied Williams' petition for for post-conviction relief. For the reasons set forth below, we affirm the judgment of the district court.

## EFFECTIVE ASSISTANCE OF COUNSEL

Williams first contends that he has been denied effective assistance of counsel at trial because counsel failed to request an independent hearing to assess the voluntariness of his confession[1] and because counsel permitted him to plead guilty to murder without first securing the prosecutor's promise not to seek the death penalty.

We will evaluate Williams' claim of ineffective assistance of counsel under the "reasonably effective assistance" test announced in Strickland v. Washington, 466 U.S. 668 (1984), which we adopted in Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984). In order for a defendant to claim he was denied effective counsel in violation of the Sixth Amendment, a defendant must first demonstrate that "[h]is counsel fell below an objective standard of reasonableness. . . . Second, a defendant must show that [counsel's] deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive a defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 687.

Williams offered no evidence, either at the evidentiary hearing or in his briefs, demonstrating that counsel's failure to request an

---

[1]Williams refers to the type of hearing set forth in Jackson v. Denno, 378 U.S. 368 (1963), which held that a defendant is entitled to a state court hearing on the voluntariness of his confession by a body other than the one trying his guilt or innocence.

independent hearing and counsel's permitting him to plead guilty to murder without first securing a waiver of the death penalty, fell below an objective standard of reasonable performance. Consequently, no facts are before us to show whether counsel's performance was "[w]ithin the range of competence demanded of attorneys in criminal cases." 466 U.S. at 687.

Even assuming counsel's assistance was unreasonable, Williams has not demonstrated prejudice, the second prong of the *Strickland* test. The record indicates that the three-judge panel found four aggravating circumstances and one mitigating circumstance.[2] The panel concluded that the aggravating circumstances outweighed the mitigating circumstance and, therefore, set the penalty at death for murder in the first degree. There was no error.

### WILLIAMS' GUILTY PLEAS

Williams next contends that he was never informed, either by counsel or the trial judge, of the consequences of his guilty pleas. Therefore, he asserts that the district court erred by accepting a guilty plea which was entered unknowingly and involuntarily. NRS 177.375(1) allows this issue to be raised on appeal after a defendant enters a plea of guilty: "[A]ll claims for post-conviction relief are waived except the claim that the plea was involuntarily entered." To properly accept a guilty plea, a court must sufficiently canvass a defendant to determine if the defendant knowingly and intelligently entered into the plea. Bryant v. State, 102 Nev. 268, 721 P.2d 364 (1986).

The record indicates that the trial judge questioned Williams about his state of mind; the possible influence of drugs or alcohol; effective assistance of counsel; the elements of murder and manslaughter; the evidence against Williams; the voluntariness of his plea; and the consequences of his plea of guilty. As previously stated, Williams received effective assistance of counsel throughout these proceedings. We conclude that the trial judge sufficiently canvassed Williams to determine if Williams knowingly and voluntarily entered the plea of guilty and thus, the district court did not err in accepting Williams' pleas of guilty of murder and manslaughter.

---

[2]The three-judge panel found the following aggravating circumstances: the murder was committed while Williams was engaged in the commission of a burglary (NRS 200.033(4)); the murder was committed while Williams was engaged in the commission of a robbery (NRS 200.033(4)); the murder was committed to avoid arrest for burglary (NRS 200.033(6)); and the murder involved torture and depravity of mind (NRS 200.033(8)).

The three-judge panel found one mitigating circumstance: Williams was nineteen years old at the time he committed the crime. NRS 200.035(6).

## WILLIAMS' CONFESSION AND MOTION TO CHANGE VENUE

Williams contends that his confession was taken in violation of his Fifth Amendment *Miranda* rights and his Sixth Amendment right to counsel. Therefore, the district court erred by refusing to suppress evidence of his confession. Williams further contends that the district court erred in denying his pretrial motion to change venue. He argues that unfavorable newspaper and television publicity and the prejudicial attitude of the citizens within Washoe County made it impossible for Williams to receive a fair and impartial trial.

When a defendant has adequate counsel and enters a guilty plea, he cannot raise independent claims charging the deprivation of his rights that occurred prior to the plea. Webb v. State, 91 Nev. 469, 470, 538 P.2d 164, 166 (1975); Tollett v. Henderson, 411 U.S. 258, 266 (1972). Further, NRS 177.375(1) prevents Williams from raising any issue, other than the voluntariness of his plea, on appeal after a properly accepted plea of guilty.

## THE DEATH QUALIFICATION OF THE JURY

Williams contends that the "death qualification" of the jury produced a conviction-prone jury which denied him the right to a fair and impartial trial in violation of the Sixth Amendment. The jury, which was impaneled but dismissed after the first day of trial, was questioned on voir dire regarding each juror's individual propensity to administer the sentence of death.

As indicated above, by entering a plea of guilty, appellant waived his right to assert this issue, as he was sentenced by a three-judge panel rather than the jury. In any event, we rejected a similar claim in McKenna v. State, 101 Nev. 338, 705 P.2d 614 (1985). Applying *McKenna,* we reject Williams' claim because no showing has been made that death-qualified juries are not impartial. Williams offered no evidence, either at the evidentiary hearing or in his briefs, to support his contention. Further, the United States Supreme Court recently held that the death qualification of a jury does not violate the Sixth Amendment because the Constitution does not prohibit the removal of jurors on voir dire whose opposition to the death penalty is so strong as to impair the performance of their duties as jurors at the sentencing phase of the trial. Lockhart v. McCree, 106 S.Ct. 1758 (1986).

## THE RACIAL AND ECONOMIC BIAS OF THE NEVADA DEATH PENALTY

Williams finally contends that the Nevada death penalty is

unconstitutionally biased because the sentence is inflicted prejudicially upon this state's indigents and minorities.

Williams offered no evidence, either at the evidentiary hearing or in his briefs, demonstrating that the Nevada death penalty is inflicted with bias or unconstitutionally, upon indigents and minorities. We have recently considered the argument that the death penalty is unconstitutional and found it to have no merit. Nevius v. State, 101 Nev. 238, 699 P.2d 1053 (1985). Further, Williams is precluded from raising this issue on appeal because he failed to raise the issue in the district court. Only those improprieties objected to at trial may be considered on appeal. Krueger v. State, 92 Nev. 749, 557 P.2d 717 (1976).

## MANDATORY REVIEW OF THE SENTENCE OF DEATH

NRS 177.055(2) requires that we automatically review the circumstances surrounding any imposition of the death penalty. Specifically, NRS 177.055(2)(d)[3] requires a proportionality review to determine, considering both the crime and the defendant, whether the sentence of death is disproportionate to the penalties imposed in similar cases throughout this state. Given that Mrs. Carlson's murder occurred during the commission of a felony and that the murder involved torturing the victim, we conclude that Williams' death sentence is neither excessive nor disproportionate. *See* Deutscher v. State, 95 Nev. 669, 601 P.2d 407 (1979); Sechrest v. State, 101 Nev. 360, 705 P.2d 626 (1985); Miranda v. State, 101 Nev. 562, 707 P.2d 1121 (1985). Further, we conclude that the record supports the three-judge panel's finding of four aggravating circumstances and the record indicates that the sentence of death was not imposed under the influence of passion, prejudice or any arbitrary factor. *See* Gallego v. State, 101 Nev. 782, 711 P.2d 856 (1985).

We find no merit to any of Williams' contentions. Accordingly, we affirm the judgment of conviction and the sentence of death and the order denying post-conviction relief.

---

[3]The United States Supreme Court recently held that state courts are not constitutionally required to conduct proportionality reviews of death sentences. Pulley v. Harris, 465 U.S. 37 (1984). NRS 177.055(2) was amended to abolish the proportionality review requirement; this amendment became effective June 6, 1985. However, the prohibition against ex post facto laws requires that we apply the law as it existed when this crime was committed in 1982.