MICHAEL LEE SMITH, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 21416

December 20, 1990                                           802 P.2d 628

(Replaces opinion issued November 28, 1990

*Michael Lee Smith,* In Proper Person, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Rex Bell,* District Attorney, Las Vegas, for Respondent.

---

# OPINION

*Per Curiam:*

This is a proper person appeal from an order of the district court, denying appellant's proper person petition for post-conviction relief.

On July 18, 1989, appellant was convicted, pursuant to a negotiated guilty plea, of two counts of first degree murder with use of a deadly weapon. Pursuant to the plea negotiations, appellant was sentenced to four consecutive terms of life without the possibility of parole in the Nevada State Prison. No direct appeal was taken. On April 27, 1990, appellant filed a petition for post-conviction relief. In that petition, appellant set forth a number of grounds which appellant alleged should be sufficient for allowing appellant to withdraw his guilty plea. That petition was opposed by the state. On June 4, 1990, the district court denied appellant's petition. This appeal followed.

Appellant contended in his petition for post-conviction relief that his guilty plea was not knowingly and voluntarily entered because he was misled by his attorney. Specifically, appellant's attorney informed appellant that it was possible that the board of pardons could commute a sentence of life without parole to a sentence allowing for parole. Appellant contends that this advice was erroneous.

In 1982, article 5, section 14(2) of the Nevada Constitution was added to read as follows:

> 2. Except as may be provided by law, a sentence of death or a sentence of life imprisonment without possibility of parole may not be commuted to a sentence which would allow parole.

NRS 213.1099(4) was enacted along with article 5, section 14(2) of the Nevada Constitution so as to become effective if and only if the constitutional amendment above was approved by the voters. That statute reads as follows:

> 4. Except as otherwise provided in NRS 213.1215 [concerning mandatory parole for some prisoners], the board may not release on parole a prisoner whose sentence to death or to life without possibility of parole has been commuted to a lesser penalty unless it finds that the prisoner has served at

least 20 consecutive years in the state prison, is not under an order that he be detained to answer for a crime or violation of parole or probation in another jurisdiction, and that he has no history of:

(a) Recent misconduct in the institution, and that he has been recommended for parole by the director of the department of prisons;

(b) Repetitive criminal conduct;

(c) Criminal conduct related to the use of alcohol or drugs;

(d) Repetitive sexual deviance, violence or aggression; or

(e) Failure in parole, probation, work release or similar programs.

The amendment of the Nevada Constitution, when read with NRS 213.1099(4), creates an ambiguity in Nevada law. The Nevada Constitution allows for the commutation of a sentence of life without parole "as may be provided by law." NRS 213.1099(4) appears to contemplate that such sentences may be commuted. Nevertheless, NRS 213.1099(4) does not contain any express language granting the board of pardons authority to commute a sentence of life without the possibility of parole to a sentence allowing for parole.[1] Instead, NRS 213.1099(4) simply provides certain restrictions on granting parole to prisoners whose sentences have been commuted. The argument could be made, therefore, that these restrictions were intended to apply only to commutations made before the amendment of the Nevada Constitution. We do not believe this construction of the statute reflects the true intent of the legislature.

The fact that the legislature enacted, at the same time the constitution was amended, a set of restrictions on the parole board regarding parole for prisoners whose sentences had been commuted, and expressly conditioned the operation of the statute on the passage of the constitutional amendment, suggests that the legislature was not attempting to eliminate the power of the board of pardons to commute such sentences, but rather that the legislature intended to place restrictions on the parole board incident to the new constitutional amendment. The inference that may be drawn from the statute is that the legislature intended that the commutation power would continue to exist, albeit with restrictions on the parole of prisoners whose sentences had been commuted.

In many cases, including the instant case, interpreting article 5, section 14(2) of the Nevada Constitution and NRS 213.1099(4) as

---

[1] Further, no other Nevada statute provides for commutation of sentences of death or of life without the possibility of parole.

stripping the board of pardons of its power to commute a sentence of life without parole would produce an especially harsh result. For example, Nevada's habitual criminal statutes provide for a sentence of life without the possibility of parole for habitual criminals. It is possible under Nevada law for a defendant, possibly a quite young defendant, upon conviction of his third nonviolent, property crime to receive a sentence of life without the possibility of parole. Assuming, without deciding, that the state constitution may, consistent with the United States Constitution, decree that such a defendant could never have his sentence reviewed by the board of pardons, he would die in prison, possibly having served sixty or seventy calendar years behind bars. When compared to other sentences imposed for violent crimes in this state, this result appears entirely unfair.

When interpreting a penal statute, this court will generally resolve a genuine ambiguity in favor of the defendant. *See* In re Laiolo, 83 Nev. 186, 426 P.2d 726 (1967). We are unwilling to ascribe to the legislature a motive to create the result of the example above unless and until the legislature expresses such an intent in clear and unambiguous terms.

We conclude, therefore, that the board of pardons retains the power to commute a sentence of life without the possibility of parole to a sentence allowing for parole, and that the parole board is subject to the restrictions of NRS 213.1099(4). Thus, the advice given to appellant by his attorney was not erroneous, and his guilty plea was knowingly and voluntarily entered.

Appellant also contended in his petition below that (1) his counsel coerced him into pleading guilty by telling him that he could not win at trial; (2) his sentence violates the eighth amendment to the United States Constitution; (3) he was not provided with a presentence report; and (4) his plea was involuntary because he was not informed of his rights before the grand jury. We have reviewed these contentions, and we conclude that they are without merit. Specifically, issues one and four are naked claims for relief unsupported by sufficient factual allegations to warrant consideration, and issues two and three could have been raised in a direct appeal from appellant's judgment of conviction, but were not. Thus, the district court did not err in denying these claims for relief without an evidentiary hearing. *See, e.g.,* Grondin v. State, 97 Nev. 454, 634 P.2d 456 (1981).

Having reviewed the record on appeal, and for the reasons set forth above, we conclude that appellant cannot demonstrate error in this appeal, and that briefing and oral argument are unwarranted. *See* Luckett v. Warden, 91 Nev. 681, 682, 541 P.2d 910, 911 (1975), *cert. denied,* 423 U.S. 1077 (1976). Accordingly, we dismiss this appeal.