944 P.2d 240 (1997)
Richard TANKSLEY and Alice D. Tanksley, Appellants,
v.
The STATE of Nevada, Respondent.
No. 27094.
Supreme Court of Nevada.
August 28, 1997.
*241 Mark B. Jackson, Gardnerville, for Appellant, Richard Tanksley.
William G. Rogers, Carson City, for Appellant, Alice Tanksley.
Frankie Sue Del Papa, Attorney General, Carson City; Noel S. Waters, District Attorney and Robert F. Bony, Deputy District Attorney, Carson City, for Respondent.

OPINION
SHEARING, Chief Justice:
Appellant Richard Tanksley ("Richard") was tried before a jury and convicted of attempting to obtain money by false pretenses and extortion. Appellant Alice Tanksley ("Alice") was tried before a jury and convicted of principal to an attempt to obtain money by false pretenses. On appeal, Richard contends (1) that the trial court abused its discretion in finding him competent to stand trial; (2) that the trial court abused its discretion in determining that he made a knowing and intelligent waiver of assistance of counsel; and (3) that the trial court abused its discretion in sentencing him to the maximum punishment. Alice contends that (1) the criminal information provided insufficient notice that she was charged as an aider and abettor; and (2) the jury was improperly instructed concerning criminal intent.
We affirm the judgment of the trial court with regard to Richard. With regard to Alice, we conclude that the trial court did not properly instruct the jury that a finding of criminal intent was required to find Alice *242 guilty of attempt. We therefore reverse Alice's conviction and remand for a new trial.

DISCUSSION
Richard argues that the district court abused its discretion in finding him competent to stand trial. He argues that he suffered from paranoid delusions which interfered with his ability to communicate rationally and to cooperate with his attorneys.
"The test to be applied in determining competency is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational and factual understanding of the proceedings against him." Jones v. State, 107 Nev. 632, 637, 817 P.2d 1179, 1182 (1991); see NRS 178.400. "When there is conflicting psychiatric testimony at a competency hearing, the trier of fact resolves the conflicting testimony of the witnesses. Furthermore, such findings will be sustained on appeal when substantial evidence exists to support them." Ogden v. State, 96 Nev. 697, 698, 615 P.2d 251, 252 (1980) (citations omitted).
The trial judge impanelled a sanity commission to determine whether Richard was competent to stand trial. Two members of the commission found Richard competent, and the third was unable to make a determination. We conclude that substantial evidence exists to support the district court's determination that Richard was competent.
Richard argues that he did not knowingly and voluntarily waive his right to assistance of counsel, and that the district court erred by failing to consider the particular facts and circumstances of his case when granting the waiver.
In reviewing whether a defendant waived his right to counsel with a full understanding of the disadvantages, this court gives deference to the decision of the trial judge, who is "much more competent to judge a defendant's understanding than this court." Graves v. State, 112 Nev. 118, 124, 912 P.2d 234, 238 (1996).
During the trial judge's canvass of Richard, the trial judge advised Richard of the dangers of self-representation, and ordered standby counsel. There is substantial evidence in the record that Richard understood the consequences of self-representation and voluntarily waived the assistance of counsel. We conclude that the trial court did not abuse its discretion in granting the waiver of counsel.
Richard argues that the district court abused its discretion in sentencing him to the maximum sentences of five years imprisonment for attempting to obtain money by false pretenses, and ten years imprisonment for extortion. He contends that his sentence would have been more proportionate to that of a co-defendant if he had been a young white male.
A district court has wide discretion in imposing a prison term and this court will not disturb the sentence absent a showing of abuse of such discretion. Glegola v. State, 110 Nev. 344, 349, 871 P.2d 950, 953 (1994). The sentencing judge has discretion to consider the defendant's age and prior record. Deveroux v. State, 96 Nev. 388, 390, 610 P.2d 722, 723-24 (1980).
In the instant case, the co-defendant entered into a plea negotiation with the State. Also, unlike the co-defendant, Richard had an extensive criminal background. These factors are plausible explanations for the difference between Richard's and the co-defendant's sentences.
Finally, Richard's contention that race played a factor in sentencing is without merit. Accordingly, we affirm Richard's conviction and sentence.
Alice contends that the criminal information failed to set forth how she aided and abetted Richard, in violation of Barren v. State, 99 Nev. 661, 669 P.2d 725 (1983). In Barren, this court reversed and remanded Barren's convictions of murder and robbery because an indictment failed to provide the defendant with adequate notice to prepare his defense. Id. at 668, 669 P.2d at 730; accord Ikie v. State, 107 Nev. 916, 823 P.2d 258 (1991). In contrast to Barren, in the instant case, the State clearly proceeded on *243 the same theories that were in the information. We conclude that the information provided sufficient notice to Alice to prepare a defense to the charge of aiding and abetting.
The jury, however, was given the following instruction:
Every person concerned in the commission of a felony, whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent; and every person who, directly or indirectly, counsels, encourages, hires, commands, induces or otherwise procures another to commit a felony is a principal, and shall be proceeded against and punished as such. The fact that the person who aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him.
Jury Instruction No. 8 (emphasis added).
Alice argues that the word "who" inserted at a key point in this instruction allowed her to be convicted without a finding of criminal intent. Alice also contends that Jury Instruction No. 9 erroneously required a finding that either Richard or Alice had specific intent to commit the crime, instead of a finding that Alice had the specific intent.
At trial, the judge stated that Jury Instruction No. 8 was a verbatim recital of NRS 195.020. NRS 195.020 states in pertinent part:
The fact that the person aided, abetted, counseled, encouraged, hired, commanded, induced or procured, could not or did not entertain a criminal intent shall not be a defense to any person aiding, abetting, counseling, encouraging, hiring, commanding, inducing or procuring him.
A jury instruction should be unambiguous. See Culverson v. State, 106 Nev. 484, 488, 797 P.2d 238, 240 (1990). Nonetheless, jury instructions taken as a whole may be sufficient to cure an ambiguity in a challenged instruction. See Doyle v. State, 112 Nev. 879, 901-02, 921 P.2d 901, 916 (1996).
An attempt crime is a specific intent crime; thus, the act constituting attempt must be done with the intent to commit that crime. NRS 193.330; Curry v. State, 106 Nev. 317, 319, 792 P.2d 396, 397 (1990).
In the instant case, the word "who" in the challenged jury instruction creates an ambiguity that may have misled the jury into believing that a finding of Alice's criminal intent was not required. "The fact that the person who aided ... could not or did not entertain a criminal intent shall not be a defense" may be read to refer to Alice, who, under the facts of the case, was the person who aided Richard. In comparison, under NRS 195.020, Alice would be the "person aiding" Richard, who is "the person aided." The misworded jury instruction suggests that lack of criminal intent on the part of Alice, the person who aided, is no defense.
Taken as a whole, the jury instructions do not cure the ambiguity. Jury Instruction No. 9 reads in pertinent part, "3. That either ALICE D. or RICHARD TANKSLEY had the specific intent to obtain money... by making a false representation. ...." This appears to instruct the jury that it must find that either Richard or Alice had specific intent, but a finding that both defendants had specific intent was not required to find that both were guilty of the crimes charged.
The jury, having never been instructed that a finding of specific intent was required to convict Alice, could have returned a verdict of guilty without having found that Alice intended to obtain money by false pretenses or intended to aid and abet the obtaining of money by false pretenses. Thus, the trial court did not properly instruct the jury regarding criminal intent. We conclude that Alice's conviction must be reversed and her case remanded to the district court for a new trial.
Based on the foregoing, we reverse and remand Alice's conviction of principal to an attempt to obtain money by false pretenses. We affirm the decision of the trial court in all other respects.
YOUNG and MAUPIN, JJ., concur.
*244 ROSE, Justice, dissenting:
This case is an example of how those in our society who suffer serious mental illness are treated when they find their way into our criminal justice system. All too often, we warehouse them for lengthy sentences in an already crowded prison system. Rather than consider Tanksley's documented mental illness as mitigation in his sentence, the district judge apparently held it, and the conduct it produced, against him.
When arraigned, counsel had serious doubts about Tanksley's competence to stand trial. Tanksley's history showed prior hospitalization for delusional disorder or paranoid schizophrenia, which included two years in the Nevada State Prison's mental unit, and treatment with psychotropic medication.
The district court appointed a sanity commission to assess Tanksley's ability to stand trial and ordered Tanksley sent to Lakes Crossing for observation and evaluation. Three doctors examined him as part of the sanity commission. Two of these doctors had participated in Tanksley's sanity evaluation involving another case in Washoe County. At a hearing on the results of Tanksley's evaluation, all three doctors opined that he was suffering from delusional disorders. One diagnosed Tanksley with paranoid schizophrenia. Initially, when asked about their conclusions regarding Tanksley's competence to stand trial and to assist in his own defense, all three concluded that he could not participate effectively in his own defense. Upon reconsideration, and based on a telephone conversation with Tanksley, one psychiatrist decided Tanksley was competent, concluding that Tanksley's failure to assist in his defense was volitional. The second doctor said that Tanksley was competent to understand but could not participate in his own defense. The third doctor was unwilling to say for certain whether Tanksley's mental state would impair his ability to assist in his own defense because Tanksley refused to meet with him for purposes of the sanity commission.
Tanksley also testified at the hearing of the sanity commission. He failed to provide responsive answers to direct questions; he inferred that his defense would be assisted by many well-known and important public persons and that a child victim of kidnapping was a key figure in his defense. He testified that Nelson Mandela, kidnap victim Jaycee Lee Dugard (the minor victim in a local unsolved kidnapping case), and Ed Pearce, a newsman on local Channel 8 television, would assist him at trial, but he was unwilling to elaborate to his attorneys because they were working against him.
Tanksley was found competent to stand trial by the court at this hearing, but the court noted that Tanksley's own testimony gave a "delusional viewpoint of his defense, and [would] give a rather constrained defense at best...." Shortly before trial, Tanksley elected to represent himself, and the district judge approved his representation. During jury venire, Tanksley asked the potential jurors:
Have you all heard about Jaycee Lee Dugard, the incident in the newspaper, about her being a witness in this court?
....
The Black Panther who might know where she is from the Travis T. Hipp Sunday afternoon show?
All right. I have no further questions.
In Tanksley's opening statement, he indicated that the case involved a kidnapped child. At trial, he continued his themes of raising money to locate or secure the release of Jaycee Lee Dugard and of the conspiracy to hinder this defense.
In Tanksley's closing statement, he stated that the money he attempted to obtain from the victim was intended to be used for the release of this child, Jaycee Lee Dugard, and he spoke at length regarding evidence he believed was purposefully hidden from him. Tanksley's conduct at trial seemed to confirm the numerous medical diagnoses of delusional disorders with schizophrenia. His numerous delusions were obvious, and he was very suspicious of the judge and lawyers.
At sentencing, Tanksley argued only that the transcripts of the trial would prove the perjury and conspiracy that had taken place and that no crime had occurred. Also of interest was the court's statement at sentencing:

*245 The sentences I'm about to impose, I think, are justified by the actions of both defendants, as well as what I regard as an offensive attempt to throw a smoke screen to this Court and to the jury with regard to a child who was unfortunately kidnapped from her parents, ... to try to inject that particular child into the theory of defense for reasons that still escape this Court.
Those reasons seemed clear to the mental health professionals who testifiedTanksley is mentally ill and suffers from delusional disorders with schizophrenia. Tanksley was sentenced to five years for obtaining money under false pretenses and ten years on the extortion count, each count to run consecutive to the other, the maximum sentence that could be imposed.
While awaiting trial, Tanksley set the stuffing in his jail mattress on fire. He was charged with arson and tried for this separate offense after the above-stated sentencing. Tanksley was convicted, adjudged a habitual criminal, and given the maximum sentence of life with the possibility of parole.
Tanksley, a black man with a white wife, came to Carson City and attempted a scam on a local businessman by attempting to give him a bad check for a good one. Before any money changed hands, Tanksley's deception was discovered. His second crime was to set fire to his jail mattressa more serious offense because it necessitated evacuating prisoners. But in the broader scheme of things, there was no property loss or personal injury, and I would not classify either offense as a major felony.
Tanksley is a petty thief with a long history of mental illness. Rather than recognize that most of Tanksley's conduct was driven by his mental condition, the district judge did just the opposite. We now have sentences imposed on a mentally ill person of life imprisonment in the arson case (a minimum of ten actual years must be served before parole eligibility), plus fifteen years of sentences imposed in this case. Nevada must pay to incarcerate this man for about twenty years when no one was hurt nor property lost from conduct primarily the product of mental illness.
This case brings into question the wisdom of this Court's decision in Sims v. State, 107 Nev. 438, 814 P.2d 63 (1991), where we held that the court will not review any sentence that a district judge could have legally imposed. In dissent with Justice Springer, I stated: "The majority's failure to do so is an abdication of our responsibility and a refusal to correct an injustice when brought to our attention." Id. at 442, 814 P.2d at 65. I further stated that "I find it disheartening that the part of the criminal process that has the greatest ultimate effect on the defendantthe imposition of his or her sentenceis the part we decline to review." Id.
It still seems odd to me that we will review every discretionary act performed by a district court but refuse to scrutinize the sentence imposed in felony crimes. While such review should be conducted with appropriate deference to the district court and reluctantly exercised, the Sims case and the case in question are examples of why such review should be conducted. But, since this court has abdicated its authority to review any sentence that is legally possible to assess, I can only harangue against such a restrictive policy.
I would affirm Tanksley's conviction but vacate the sentence and remand for a new sentencing hearing before a different district judge.
SPRINGER, Justice, dissenting:
I agree that the judgment of conviction should be affirmed. I do not join in Justice Rose's analysis of the sentencing in this case; but, based on my reading of the record, I agree that the sentence is excessive and that the case should be remanded for re-sentencing.