JACK ELMER SUMMERS, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 5904

March 26, 1970                     467 P.2d 98

[Rehearing denied April 14, 1970]

*Samuel B. Francovich,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, *William J. Raggio,* District Attorney, and *Herbert F. Ahlswede,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

The early background to this case was summarized in Thomas v. Bokelman, 86 Nev. 10, 462 P.2d 1020 (1970), a civil suit by the surviving husband and foster children of Mrs. Mary Thomas for monetary recovery for her murder by Jack Elmer Summers. Summers, after his release from prison on a rape charge, resided with his half brother, William Bokelman. Bokelman was unable to support Summers after a few weeks and asked Summers to leave the household. Apparently angered, Summers went on a drinking spree during which he surreptitiously shot Mary Thomas while Mrs. Thomas and Mrs. Bokelman were in the Bokelman home. He was convicted of murder and sentenced to death by the jury.

Summers' grounds for this appeal variously assert that he should have a new trial because, first, he gave his confession under "duress," the basis of which was that he had been deprived of his glasses and that this caused a headache at the time the confessions were given; second, that the trial judge

erred in his reply to a question from the jury; third, photographs of the deceased were wrongly admitted into evidence; and, finally, that certain requested instructions should have been given but were refused.

The murder took place about 1:00 p.m. on July 8th. Summers was apprehended about 2:45 a.m. on July 9th. He was given the Miranda warning (Miranda v. Arizona, 384 U.S. 436 (1966)) when arrested though it was obvious to the arresting police officer that Summers had been drinking. Later, about 11:00 a.m., officer Benham interrogated Summers after giving him another Miranda admonition. Summers then made an oral confession to Benham. Benham summoned a court reporter and Summers confessed again. However, at the first confession he had requested his glasses saying he could not read without them and that he was subject to headaches without his glasses. Benham told him he would ask the jail personnel for the glasses which he did after the second confession, but Summers never received his glasses.

1. The trial court conducted a hearing out of the presence of the jury to determine the propriety of the confessions. The arresting officer testified that it was his opinion that Summers knew what he was doing and understood the Miranda warning. In fact Summers signed a card acknowledging his awareness at about 3:00 a.m. After other testimony was received as to Summers' condition and capacity to understand, the trial judge ruled that the statements were voluntarily made and could be used against Summers. We agree with his conclusion.

The mere absence of his reading glasses was not such coercion upon Summers as to constitute a "third degree" forced confession. Wallace v. State, 84 Nev. 603, 447 P.2d 30 (1968); see also Miranda v. Arizona, supra, at 445–458. Rocking chair treatment is not a condition to the taking or admissibility of a confession. The indications are that Summers' headache was not caused from depriving him of his glasses but was a hangover.

2. After the jury retired for deliberation the foreman sent a note to the judge reading as follows:

"Re: punishment to be confinement in the State Prison for life, without possibility of parole.

"Is such a decision subject to review at a later date which would result in the release of defendant?"

Defense counsel, not satisfied with a proposed written

answer of the judge, submitted a response that the judge gave to the jury. It was as follows:

"The Court advises you that the question propounded must be divided into two parts.

"The first part is as follows: Is such a decision subject to review at a later date . . .?

"The Court informs you that the answer to that part of the question is in the affirmative. Under the laws of the State of Nevada any sentence imposed may be reviewed by the State Board of Pardon Commissioners.

"The second part of the question is as follows:

". . . which *would* result in the release of the defendant? (Italics supplied.)

"The Court informs you that as to this part of the question it cannot be answered by this Court. This Court loses jurisdiction after sentence is pronounced. If you recommend sentence of life imprisonment without possibility of parole, this Court will impose that sentence. Whether or not the State Board of Pardon Commissioners upon review, if requested by the defendant, would change that sentence, this Court has no way of knowing. The State Board of Pardon Commissioners, however, would have the power to modify the sentence at a later date as pointed out in answer to the first part of the question."

We reaffirm the rule announced by this court in Serrano v. State, 84 Nev. 676, 679–680, 447 P.2d 497 (1968), concerning what the jury should be told about parole in a murder case. See also Bean v. State, 81 Nev. 25, 398 P.2d 251 (1965), although in that case the subject of the jury considering parole arose through a prosecutor's comment to the jury instead of by court instruction.

In a charge of murder the determination of whether parole should be considered at some future date is within the province of the jury. Serrano v. State, supra.[1] An instruction that discusses parole in a murder case is proper if the jury is not misled and so long as it does not enlarge upon the matter of parole such as requirements for eligibility, how the scheme works, etc. Bean v. State, supra, at 35.

[1]NRS 200.030(3): If the jury shall find the defendant guilty of murder in the first degree, then the jury by its verdict shall fix the penalty at death or imprisonment in the state prison for life with or without possibility of parole. . . .

3.   Two colored pictures of the corpse of the deceased were admitted into evidence showing the location of the six bullet holes. The prosecutor offered the pictures for the purpose of establishing the degree of the crime. He theorized that since Mrs. Bokelman testified to hearing three shots before she ran from the scene of the shooting the three more bullet holes would tend to show Summers' premeditation. No error was committed by admitting the pictures into evidence. Wallace v. State, supra; Langley v. State, 84 Nev. 295, 297, 439 P.2d 986 (1968).

4.   Defendant's requested instructions which were refused were included in other instructions given to the jury. Wallace v. State, supra, at 605.

We find no error.

Affirmed.

COLLINS, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.