ROGER BRENT DAVIS, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 21568

September 17, 1991            817 P.2d 1169

*Goodman, Stein & Chesnoff,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, *Stuart J. Newman,*
Deputy Attorney General, Carson City, for Respondent.

## OPINION

By the Court, YOUNG, J.:

Appellant was convicted of first degree murder with use of a deadly weapon for the death of his girlfriend, Sandee Cusson, in 1986. His direct appeal to this court was dismissed in July, 1988. Appellant now appeals from the district court's denial of his petition for post-conviction relief. The majority of the contentions raised by appellant's post-conviction petition were raised in his direct appeal. Many were dismissed by this court on direct appeal because defense counsel failed to lodge contemporaneous objections at trial. Appellant now claims that these failures constituted ineffective assistance of counsel.

The United States Supreme Court has established a two-part test for the review of ineffective assistance of counsel claims. First, appellant must demonstrate that his trial counsel's representation fell below an objective standard of reasonableness. Second, appellant must show that counsel's deficient performance prejudiced the defense to such a degree that, but for counsel's ineffectiveness, the results of the trial would probably have

been different. Strickland v. Washington, 466 U.S. 668, 687 (1984). There is a presumption that trial counsel fully discharged his or her duties. This presumption may only be overcome by "strong and convincing proof to the contrary." Lenz v. State, 97 Nev. 65, 66, 624 P.2d 15, 16 (1981).

We now turn to the various instances of ineffective assistance alleged in appellant's petition.

*Failure to suppress appellant's videotaped statement.*

Appellant gave a statement to the police shortly after Cusson's death wherein he maintained that she killed herself after they had quarreled. The statement was videotaped by the police. Immediately prior to the start of the trial, defense counsel requested that the statement be excluded as involuntarily given. The trial court's rulings that the statement was voluntary, and the videotape admissible, were affirmed by this court on direct appeal.

Appellant now alleges that defense counsel was ineffective in failing to recognize at an earlier stage in the pre-trial proceedings that suppression of the videotaped statement was supported by Miranda v. Arizona, 384 U.S. 436 (1966). Appellant also cites Sechrest v. State, 101 Nev. 360, 705 P.2d 626 (1985), wherein this court held that all police questioning must cease after any request for counsel.

We believe the district court correctly determined that counsel was not ineffective in failing to have the videotaped statement suppressed. The statement was given after appellant voluntarily responded to a police request for a non-custodial interview. Appellant was given his Miranda warnings prior to the interview. Despite being advised of his rights, appellant told the police that he believed the victim had committed suicide. We have previously held that a criminal defendant's statements to the police are admissible absent any contradictory evidence that the accused's Miranda warnings were improperly given. Howard v. State, 102 Nev. 572, 576, 729 P.2d 1341, 1343-44 (1986). In this case, there was no evidence contradicting the validity of appellant's Miranda warnings.

The record also indicates that appellant was eager to communicate his version of the victim's death. He did so without prompting or encouragement from the police. The statement contained in the videotape was exculpatory and conformed to the theory of defense appellant presented at trial. The prohibition in *Sechrest* against further questioning cited by appellant does not apply when the accused himself initiates further communication. 101 Nev. at 365, 705 P.2d at 629-30. We believe this to be the case in the present appeal.

We believe the statement was clearly admissible and fail to see how counsel's failure to lodge an earlier objection would have made a difference in the outcome of appellant's trial. We therefore hold that this contention fails to meet the *Strickland* test for ineffective assistance of counsel.

*Failure to present a manslaughter defense.*

Appellant also asserts that counsel's failure to present a voluntary manslaughter theory of defense, or request a manslaughter jury instruction, constituted ineffective assistance of counsel. At the post-conviction hearing, defense counsel stated that a manslaughter theory and instruction would have been inappropriate because appellant's theory of defense was that the victim either killed herself or was killed by someone else. The court below agreed. We believe the lower court's decision was correct. Appellant maintained his total innocence of the crime at all times. Offering a voluntary manslaughter theory or requesting an instruction on it would have been totally contrary to the defense's theory of the case.

On appeal, this court will not second-guess an attorney's tactical decisions where they relate to trial strategy and are within the attorney's discretion. Wilson v. State, 99 Nev. 362, 372, 664 P.2d 328, 334 (1983); Watkins v. State, 93 Nev. 100, 102, 560 P.2d 921, 922 (1977). This remains so even if better tactics appear, in retrospect, to have been available. Accordingly, we find no ineffective assistance in defense counsel's failure to present a manslaughter defense theory or failure to request a manslaughter jury instruction.

*Failure to object to the charge against sympathy.*

At the start of appellant's trial, the judge instructed the jury that it must not be influenced by any personal feelings of sympathy for or against any party. A similar charge was given before the jury went into deliberation. Defense counsel failed to object to either charge. Appellant argues that the court's charge against sympathy violated California v. Brown, 479 U.S. 538 (1987), and that counsel's failure to object on the basis of the *Brown* decision constituted ineffective assistance.

In *Brown,* the Court upheld the use of an instruction against sympathy only because the defendant was afforded the opportunity to present mitigating circumstances. 479 U.S. at 541-43. Appellant argues that, because he was not afforded a similar opportunity to present mitigating circumstances at trial, the

charge against sympathy was in error and defense counsel was ineffective in failing to object to it.

The State argues that appellant's decision not to present mitigating factors was a matter of trial tactics in conformity with his innocence theory of defense, and that any appeal to the jury for sympathy would have detracted from this theory.

We agree with the State's assertion that failure to present mitigating circumstances was a tactical decision and should not be second-guessed by this court. *Wilson,* 99 Nev. at 372, 664 P.2d at 334; *Watkins,* 93 Nev. at 102, 560 P.2d at 922. Furthermore, we do not believe that an opportunity for informing the jury of mitigating circumstances was procedurally warranted in this case. All of the authority cited by appellant pertains to the presentation of mitigating circumstances during a bifurcated penalty phase hearing where the imposition of the death penalty is a sentencing option.[1] The State did not seek the death penalty in this case. On direct appeal, this court dismissed appellant's contention that he was entitled to a bifurcated penalty hearing. We stand by that ruling on the current appeal.

*Failure to request a jury view of the crime scene.*

Defense counsel did not request that the jury be allowed to view the scene of Sandee Cusson's death. At the post-conviction hearing, counsel stated that he did not believe an in-person view would have added anything to the photos of the scene already introduced at trial. The court below concurred in that belief, finding that the decision not to request a jury view was a consciously chosen trial tactic.

Appellant fails to demonstrate how a jury view would have helped his case. We are at a loss to see what difference it would have made or how appellant was prejudiced. Accordingly, we hold that appellant's contention fails the *Strickland* test.

*Failure to adequately prepare direct and cross-examination of witnesses.*

At trial, the defense called a doctor who saw appellant at the hospital after the victim's body was taken there. This witness was called to establish that appellant was not of his right mind after the shooting and, therefore, that the statements he made to the police shortly afterward could not have been voluntary. On direct

---

[1]*See* Hogan v. State, 103 Nev. 21, 732 P.2d 422 (1987); Howard v. State, 102 Nev. 572, 729 P.2d 1341 (1986); Milligan v. State, 101 Nev. 627, 708 P.2d 289 (1985); Biondi v. State, 101 Nev. 252, 699 P.2d 1062 (1985).

examination, the doctor testified to his belief that appellant was coherent when he saw him at the hospital. The medical attendant who took appellant's blood alcohol content at the hospital was also called by the defense. He also stated, on direct examination, that he believed appellant was coherent at the time.

Appellant argues that the testimony of the two men, both called on his behalf, was damaging to his defense and demonstrates defense counsel's failure to adequately prepare his witnesses. Appellant also argues that defense counsel was remiss in his cross-examination of a State witness who testified that the victim and appellant had a fight on the day before her death.

Defense counsel testified at the post-conviction hearing below that he was guilty of asking "one question too many" and asking questions that "perhaps should not have been asked at trial." The court below believed that counsel was probably "overzealous" in his questioning at times, but that the evidentiary reversals suffered because of such questioning were "not due to inadequate preparation." Our review of the record leads us to concur in this conclusion. We do not believe counsel's performance in connection with these witnesses fell below the reasonableness standard established in *Strickland*.

*Failure to request the Petrocelli instruction.*

Appellant argues that counsel's failure to request the model clemency jury instruction[2] specified in Petrocelli v. State, 101 Nev. 46, 56, 692 P.2d 503, 511 (1985), constituted ineffective assistance of counsel. He claims that the instruction actually given[3] omitted crucial protective elements found in the Petrocelli

---

[2]The model instruction states:

    1. Life imprisonment with the possibility of parole is a sentence to life imprisonment which provides that the Defendant would be eligible for parole after a period of ten years. This does not mean that he would be paroled after ten years, but only that he would be eligible after that time period.

    2. Life imprisonment without the possibility of parole means exactly what it says, that the Defendant shall not be eligible for parole.

    3. If you sentence the Defendant to death you must assume that the sentence will be carried out.

    4. Although under certain circumstances and/or conditions the State Board of Pardons Commissioners has the power to modify sentences, you are instructed that you may not speculate as to whether the sentence you impose may be changed at a later date.

[3]Instruction No. 16 stated:

If the penalty is fixed at life imprisonment with the possibility of parole, eligibility for parole begins when a minimum of ten years has been served. If the penalty is fixed at life imprisonment without the possibility of parole, the Defendant shall not be eligible for parole.

instruction. Appellant asserts that trial counsel's lack of familiarity with the Petrocelli instruction, and his ensuing failure to request the instruction, were *per se* ineffective assistance of counsel because it allowed the prosecution to invite jury speculation on the possibility of parole in violation of this court's holding in Milligan v. State, 101 Nev. 627, 637, 708 P.2d 289, 295 (1985).

Appellant raised this contention in his direct appeal. This court found that it was without merit because he had not requested the instruction at trial. Appellant now asserts that counsel's failure to request the instruction constituted ineffective assistance. The mandatory instruction, while not expressly limited to capital cases, is generally associated with them. We therefore see nothing unreasonable in counsel's failure to request the Petrocelli instruction in a case where the State did not seek the death penalty. We also do not believe that the giving of the instruction would have made a difference in the outcome of appellant's trial or the sentence he received. Accordingly, we hold that appellant's claim fails to meet the *Strickland* test for ineffective assistance.

*Failure to object to prosecutorial misconduct.*

In his direct appeal, appellant alleged that the prosecution made a number of improper references during closing argument. This contention was dismissed because defense counsel failed to object to the statements at trial. Appellant now contends that counsel's failure to object constituted ineffective assistance. This ground for relief was not part of appellant's original petition for post-conviction relief and was not considered in the district court's order denying that petition. Hence, it need not be considered by this court. McKay v. City of Las Vegas, 106 Nev. 203, 207, 789 P.2d 584, 586 (1990). We will nevertheless discuss the allegations of misconduct because of the seriousness of the issues raised.

Among the references objected to are statements pertaining to appellant's offer, in his videotaped statement, to take a polygraph test to substantiate his version of the events surrounding Sandee

---

Under the laws of the State of Nevada, any sentence imposed by the Jury may be reviewed by the State Board of Pardon Commissioners. Whatever sentence you return in your verdict, this Court will impose that sentence. Whether or not the State Board of Pardon Commissioners, upon review, if requested by the Defendant, would change that sentence, this Court has no way of knowing. The State Board of Pardon Commissioners, however, would have the power to modify any sentence at a later date.

Cusson's death. The prosecution also commented on appellant's subsequent failure to follow through with this offer. Appellant argues that these references were in direct contravention of our holding in Santillanes v. State, 102 Nev. 48, 50, 714 P.2d 184, 186 (1986), wherein we held that proof that a defendant in a criminal trial refused to take a polygraph test, or offered to submit to one, is inadmissible and incompetent evidence.

We believe the present situation is distinguishable from *Santillanes*. In that case, the defense attempted, by pretrial motion, to exclude all evidence concerning Santillanes' failure to take a polygraph. Here, evidence of the polygraph test was introduced by way of the videotaped statement appellant gave to the police wherein he offered to submit to the test. We have already discussed why we believe the videotape was admissible. The polygraph references found in the State's closing argument were made while the prosecutor was recapping the contents of the videotape. We do not believe they rose to the same level of prejudice which necessitated reversal in *Santillanes*. Accordingly, we do not believe defense counsel's failure to object to the polygraph references amounted to ineffective assistance of counsel.

Appellant also objects to the prosecution's reference to a defense witness as a "hired gun." Appellant argues that this statement was in violation of our holding in Sipsas v. State, 102 Nev. 119, 716 P.2d 231 (1986). In *Sipsas,* the prosecutor made the following remarks in relation to a California coroner who testified as an expert witness for the defense:

> Now, that brings us to Dr. Jindrich. The hired gun from hot tub country. Have stethoscope, will travel.
>
> . . . .
>
> I think Dr. Jindrich is a living example of Lincoln's law. You can fool all of the people enough of the time.
> He is a politician. He runs for office.

102 Nev. at 125, 716 P.2d at 234. Defense counsel failed to object to these statements at trial. This court found these remarks to be so prejudicial that they required *sua sponte* intervention to protect the defendant's right to a fair trial. *Id.*

In the present case, the remark appellant objects to occurred in the State's closing argument when the prosecutor referred to the testimony of a ballistics expert called by the defense to establish where Sandee Cusson was shot:

> There is a shooting in the truck and high velocity blood found within the vehicle. He [the expert] can't even find evidence of that having occurred. Well, we know it

occurred. *He's a hired gun himself.* . . . What is the point of origin? He didn't know. He didn't know the point of origin of the blood. That's what the science [ballistics] is all about.

(Emphasis added.) This portion of the State's summation reflects an effort to impugn the abilities of the defense's expert. The reference to the witness being a "hired gun himself" was a play on words made in relation to the witness' professed expertise in ballistics. We believe the jury recognized it as such. We do not believe the remark created the same degree of prejudice which necessitated reversal in *Sipsas*. Accordingly, counsel's failure to object to the remark did not amount to ineffective assistance of counsel.

All of appellant's contentions having failed to meet the test for ineffective assistance of counsel established in *Strickland,* we hereby affirm the judgment of the district court.

MOWBRAY, C. J., and STEFFEN, J., concur.

ROSE, J., with whom SPRINGER, J., agrees, concurring:

I am concurring because the performance of Roger Davis' (Davis) counsel was deficient in two respects, but the result of the trial would have been the same even if the errors had not been made. Therefore, reversal is not mandated pursuant to Strickland v. Washington, 466 U.S. 668 (1984).

The two errors I believe defense counsel for Davis made at trial were that (1) no objection was lodged to the prosecutor's improper reference to Davis' refusal to take a lie detector test, and (2) defense counsel did not request an instruction delineating the difference between a life with and life without the possibility of parole sentence pursuant to Petrocelli v. State, 101 Nev. 46, 692 P.2d 503 (1985).[1]

During closing argument, while paraphrasing appellant's statement from the videotape, the prosecution advised the jury of appellant's refusal to follow through with the test:

"I told her to get out, and then I pulled the coil wires. . . . Then I passed out. She was sitting in the pickup when I saw her. She shot herself. The gun was on the table in the house." *Demands a lie detector test. He was offered one. He didn't take it.*

(Emphasis added.)

At another point in his summation, the prosecutor quoted

---

[1]Any *Petrocelli* instruction should be updated to reflect the current law that a defendant sentenced to life without the possibility of parole is not eligible for parole until he or she has served twenty calendar years. *See* Nev. Const. art. 5, § 14(2); Smith v. State, 106 Nev. 781, 802 P.2d 628 (1990).

appellant's statement from the videotape: "He keeps demanding, he says—this is his words, 'Lie detector the hell out of me.' He was offering."

Appellant raised the impropriety of these statements on direct appeal. In dismissing that appeal, we noted defense counsel's failure to object to the polygraph references. Counsel's failure to object meets the first-part test for ineffective assistance of counsel established in *Strickland.* Defense counsel's failure to object to the prosecutor's remarks fell below a reasonable standard of representation.

Evidence of a criminal defendant's refusal to take a polygraph test is in the nature of a comment on the defendant's exercise of his fifth amendment right against self-incrimination and is inadmissible. Santillanes v. state, 102 Nev. 48, 51, 714 P.2d 184, 186 (1986). The facts presented by this appeal are very similar to those found in *Santillanes.* During the taking of a voluntary statement by police, Santillanes offered to take a lie detector test to corroborate his statement. He subsequently refused to follow through with this offer. At his trial for murder, the court, over objection, admitted testimony concerning Santillanes' offer and subsequent failure to take a polygraph test. The prosecutor commented on this testimony in his closing remarks. This court found that evidence of the defendant's offer and failure to take a polygraph, and the prosecution's comments about it, constituted error. This holding should mandate that we also find the prosecutor's remark error and failure to object to it ineffective representation.

Counsel failed to request a *Petrocelli* instruction. The majority opinion does not find error in this because it concludes that such an instruction is limited to cases where the death penalty is in issue. I disagree. The purpose of the *Petrocelli* instruction is to give the jury some idea of the real meaning of the penalty it is to impose on a defendant. It is a common belief by the populous that a prisoner sentenced to life does not actually stay in prison for his or her entire existence, and I am sure jurors speculate about what life with or life without the possibility of parole actually means in terms of years to be served. In fact, in *Petrocelli* we expressly stated that the jury should take into account whether parole for the defendant will be considered at some future date.

> Petrocelli also relies upon Serrano v. State, 84 Nev. 676, 447 P.2d 497 (1968), contending that a jury should not consider possible future modifications of its sentence. In *Serrano,* and again in Summers v. State, 86 Nev. 210, 467 P.2d 98 (1970), however, we explicitly held that the determination of whether parole should be considered at some future date is within the province of the jury.

101 Nev. at 56, 692 P.2d at 510. Apparently, the majority wants the jury to consider the future possibility of parole, but to do it by speculation rather than with the aid of a concrete instruction as to when parole would be possible.

While the giving of a *Petrocelli* instruction may not be as compelling in a non-capital case when the decision between life with or life without parole is being made, the reasons for giving it remain the same—to prevent jury speculation and to give the jury an idea of what is meant by the actual sentences to be considered. When a jury is making the decision between life with and life without the possibility of parole, the difference of at least ten calendar years in prison is usually in the balance.

Although I believe defense counsel was ineffective, I do not believe the result would have been different had the errors not been made. While improper, the reference to the defendant's refusal to take a lie detector test was only made in passing, and the prosecutor did not dwell on that point. Additionally, there is abundant evidence to establish the fact that Davis murdered the victim, and his claim that the victim inflicted the mortal wounds on herself was completely discredited. There is no indication in the record to show that the jury wavered between possible sentences, and no request for a more specific instruction was made by the jury. I believe the result would have been the same even if a *Petrocelli* instruction had been given. Therefore, the second part of the *Strickland* case is not met. For this reason, I concur in the affirmance of this case.