HENRY DANIEL DAWSON, JR., Appellant, v. THE STATE OF NEVADA, Respondent.

No. 21799

January 24, 1992                    825 P.2d 593

[Rehearing denied May 18, 1992]

*Cherry & Bailus,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Rex Bell,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, and *William P. Henry,* Deputy District Attorney, Clark County, for Respondent.

# OPINION

*Per Curiam:*

Appellant Henry Daniel Dawson ("Dawson") was convicted of first degree murder and sentenced to death. We affirmed the conviction and remanded for a new penalty determination. *See* Dawson v. State, 103 Nev. 76, 734 P.2d 221 (1987). After his second penalty hearing, Dawson was sentenced to death, and we

affirmed the sentence. *See* Dawson v. State, Docket No. 18558, Order Dismissing Appeal, October 21, 1988. Dawson filed a proper person petition for post-conviction relief, alleging that he had received ineffective assistance of counsel and requesting the appointment of counsel. The district court denied the request for counsel and dismissed the petition. We directed the district court to hold an evidentiary hearing to resolve the factual issues raised in Dawson's petition and to appoint counsel to represent him during those proceedings. *See* Dawson v. State, Docket No. 20440, Order of Remand, November 17, 1989. After an evidentiary hearing, the district court denied Dawson's petition for post-conviction relief. We conclude that none of Dawson's claims of ineffective assistance of counsel warrant relief. We therefore affirm the district court.

## Discussion

Claims of ineffective assistance of counsel are reviewed under the "reasonably effective assistance" standard articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). *See* Bejarano v. State, 106 Nev. 840, 842, 801 P.2d 1388, 1389 (1990). This standard requires the defendant to show that counsel's assistance was "deficient" and, secondly, that the deficient assistance "prejudiced" the defense. *Strickland,* 466 U.S. at 687.

More particularly, "deficient" assistance requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In order to eliminate the distorting effects of hindsight, courts indulge in a strong presumption that counsel's representation falls within the broad range of reasonable assistance. If the defendant shows that counsel's performance was deficient, the defendant must show that, but for counsel's errors, the result of the trial would probably have been different. *Id.* at 694; Davis v. State of Nevada, 107 Nev. 600, 601, 602, 817 P.2d 1169, 1170 (1991).

We now address, based on the above standards, the various claims of ineffective assistance of counsel.

### Failure to properly impeach Shepard's husband.

On March 7, 1985, the body of Leslie Shepard ("Shepard") was found behind Caesar's Palace. She was almost nude and had been bludgeoned to death by a soft-drink canister. At approximately 5:50 a.m. that morning, Shepard reported to work at a Stop 'N' Go market. She disappeared shortly thereafter. At trial, Shepard's husband testified that he fought with his wife the night

before her death, and that after their fight, he went "bar hopping" with a friend. He further testified that he had physically injured Shepard several times during their marriage. Dawson's counsel attempted to paint Shepard's husband as the murderer.

Dawson first contends that his counsel failed to properly impeach Shepard's husband as to his heavy substance abuse and his propensity for violence based on his criminal history. The record, however, reveals that Dawson makes unfounded statements about the husband's substance abuse and that Mr. Shepard's "criminal history" (arrest reports) does not show a "propensity" for violence.[1]

Dawson secondly contends that his counsel failed to properly impeach Shepard's husband when Mr. Shepard testified that his car was red. Dawson asserts that the police report indicates that Mr. Shepard's car was burgundy, the same color as Dawson's car. At the evidentiary hearing, however, Dawson stated his car was not burgundy but was a white-over-maroon, 1971 two-door Lincoln Continental.

Even if counsel's failure to impeach Mr. Shepard's testimony about the color of his car constitutes deficient performance, the overwhelming evidence in this case undermines any showing by Dawson that he was prejudiced by such deficient performance. A trial witness who knew Dawson placed him at the scene of the abduction around the time Shepard disappeared. According to that testimony, Dawson was driving alone in his car as he pulled into the Stop 'N' Go market. He pulled up to the gas booth which Shepard tended, stopped for about five minutes, and drove away with a white passenger who had brownish, shoulder-length hair and wore a blue shirt. Pictures of Shepard's body were introduced at trial. Shepard was also identified as a white female with brownish-blond, shoulder-length hair. Shepard wore a blue Stop 'N' Go shirt as part of her work uniform. After leaving the Stop 'N' Go market, Dawson ran a red light and headed toward the back of Caesar's Palace. Another witness, an employee of Caesar's Palace, testified at trial that she saw a "two-toned car" speeding away from the back of Caesar's Palace at approximately the same time that Shepard was killed.

Furthermore, the police searched Dawson's car and found two buttons, a small piece of belt and some hair samples. A witness identified one of the buttons as having characteristics identical to the remaining buttons on Shepard's blouse. The belt was identified as part of Shepard's belt. The hair samples had similar

---

[1]The record indicates that Shepard's husband had been arrested for burglary and driving under the influence of alcohol. However, the burglary charge was dismissed because there was insufficient evidence.

characteristics as hair samples taken from Shepard's body. Hence, we conclude that Dawson has failed to show that he was prejudiced by counsel's failure to impeach Mr. Shepard when he testified about the color of his car.

Accordingly, these impeachment contentions fail the standards set forth in *Strickland.*

### *Failure to conduct a proper investigation.*

Dawson next argues that his counsel failed to conduct a proper investigation into a "plausible line of defense," namely, that another black man named Warren Cowart murdered Shepard. He contends that the charge against appellant was a case of mistaken identity. Dawson's support for this argument is that approximately one month before Shepard's death, Cowart asked Shepard out on a date. She declined. He got angry and threw a beer can which hit her in the back. He later pled guilty to misdemeanor assault charges. At the evidentiary hearing, counsel noted that he was aware of this altercation, but that his trial strategy nevertheless focused on the "husband-did-it" theory. After review of the record, we conclude that counsel conducted a reasonable investigation into the Cowart incident and thereafter reasonably pursued another line of defense. Strategic choices made by counsel after thoroughly investigating the plausible options are almost unchallengeable. *Strickland,* 466 U.S. at 690. Accordingly, we find that counsel's performance did not fall below the reasonableness standard enunciated in *Strickland.*[2]

### *Failure to object to a jury instruction.*

Dawson contends that during the penalty phase of his trial, counsel failed to properly argue that NRS 200.030(4)[3] does not

---

[2]Dawson also renews an argument about a discrepancy in his blood type, negating evidence that it was Shepard's blood on his car. This court has previously rejected this argument as meritless. *See* Dawson v. State, Docket No. 18558, Order Dismissing Appeal, October 21, 1988. Therefore, this is the law of the case, and we will not address this issue. Hall v. State, 91 Nev. 314, 315, 535 P.2d 797, 798 (1975).

[3]NRS 200.030(4) provides:

4. Every person convicted of murder of the first degree shall be punished;

(a) By death, only if one or more aggravating circumstances are found and any mitigating circumstance or circumstances which are found do not outweigh the aggravating circumstance or circumstances.

(b) Otherwise, by imprisonment in the state prison for life with or without possibility of parole. If the penalty is fixed at life imprisonment with possibility of parole, eligibility for parole begins when a minimum of 10 years has been served.

mandate that the jury impose the death penalty, even when aggravating circumstances outweigh mitigating circumstances. He further argues that his counsel failed to point out that Dawson was not required to establish any mitigating circumstance in order to receive a sentence less than death.

The jury instruction which Dawson now contends should have been objected to at the penalty hearing provided:

> The jury *may* impose a sentence of death if it finds at least one aggravating circumstance has been established beyond a reasonable doubt and further finds that there are not mitigating circumstances sufficient to outweigh the aggravating circumstances found.
>
> Otherwise, the punishment imposed shall be imprisonment in the State Prison for life with or without the possibility of parole.

(Emphasis added.)

Recently, we discussed this exact instruction and found that the word "may" is commonly understood by reasonable jurors as a permissive word that does not mandate a particular action. Riley v. State, 107 Nev. 205, 217, 808 P.2d 551, 558-59 (1991). Thus the jury was properly informed that the imposition of the death sentence was not compulsory, even if aggravating circumstances outweighed mitigating circumstances. *Id; see also* Bennett v. State, 106 Nev. 135, 144, 787 P.2d 797, 803 (1990) ("Nevada's statute does not require the jury to impose the death penalty under any circumstances, even when the aggravating circumstances outweigh the mitigating circumstances."), *cert. denied,* 111 S.Ct. 307 (1991).

Dawson also alleges that his counsel was ineffective for failing to object to the following aggravating circumstances instruction on the ground that it was unconstitutionally overbroad:

> You are instructed that the following factors are circumstances by which murder of the first degree *may be* aggravated:
> 1. The murder was committed while the defendant was engaged in the commission of or an attempt to commit or flight after committing or attempting to commit Kidnapping in the First Degree.
> 2. The murder was committed while the defendant was engaged in the commission of or an attempt to commit or flight after committing or attempting to commit sexual assault.

(Emphasis added.) Dawson argues that without a further definition, this instruction merely repeats a crucial element of the

underlying offense. He contends that this aggravating circumstance actually "refers to killings that occur when an individual attempts to fend off an actual arrest and flee custody." Apparently, Dawson is arguing that NRS 200.033(4)[4] *must be* coupled with NRS 200.033(5)[5]; otherwise, any murder committed during the crimes enunciated in NRS 200.033(4) will *always be* aggravated.

We conclude, however, that the instruction reflected a proper reading of NRS 200.033. NRS 200.033(4) is a separate circumstance by which murder of the first degree *may be* aggravated. There is no requirement that the aggravating circumstance in NRS 200.033(4) must also be committed to avoid a lawful arrest or to effect an escape from custody. Instead, NRS 200.033 provides that a murder to avoid lawful arrest or to effect an escape from custody is, pursuant to NRS 200.033(5), a separate circumstance by which a first degree murder *can be* aggravated.

Accordingly, counsel did not have adequate grounds to object to these jury instructions, and, consequently, Dawson's claims in regard to these jury instructions do not meet the *Strickland* test.

*Failure to move to exclude the prostitute's testimony.*

Yvonne Jackson ("Jackson"), a Las Vegas prostitute, testified at a preliminary hearing that on the day of Shepard's death, she was followed by Dawson to her apartment; he pretended to be a police officer and raped her. Jackson was warned that if she did not testify, the State would get a material witness warrant to compel her appearance. Jackson was thereafter subpoenaed to appear at trial; nonetheless, she skipped town and was unavailable at trial. Her preliminary hearing testimony was therefore read into evidence.

Dawson argues that counsel was ineffective because he failed to move to exclude Jackson's testimony, as prejudicial reference to a prior criminal act, namely, that Dawson raped Jackson. The

---

[4]NRS 200.033(4) provides that a first degree murder may be aggravated when:

> 4. The murder was committed while the person was engaged, alone or with others, in the commission of or an attempt to commit or flight after committing or attempting to commit, any robbery, sexual assault, arson in the first degree, burglary, invasion of the home or kidnaping in the first degree, and the person charged:
> (a) Killed or attempted to kill the person murdered; or
> (b) Knew or had reason to know that life would be taken or lethal force used.

[5]NRS 200.033(5) provides that first degree murder may be aggravated when "[t]he murder was committed to avoid or prevent a lawful arrest or to effect an escape from custody."

district court, however, excised the reference to rape.[6] In regards to this argument, we therefore find that counsel's performance was within the reasonableness standard of *Strickland*.

Dawson also argues that counsel was ineffective for failing to object to the admission of Jackson's testimony based on the fact Dawson was denied the right to cross-examine Jackson. The decision to admit preliminary hearing testimony after balancing the prejudicial effect against its probative value is one addressed to the sound discretion of the trial court. *Passarelli v. State*, 93 Nev. 292, 294, 564 P.2d 608, 610 (1977). We conclude that the district court did not abuse its discretion in admitting Jackson's testimony with the reference to rape excised. Accordingly, Dawson's claim fails under *Strickland*.

*Failure to move to suppress Dawson's statements and for a jury instruction on the voluntariness of those statements.*

Dawson argues that counsel was ineffective for failing to move to suppress Dawson's statements which he made to the police at his apartment. Because this argument was previously raised and rejected on appeal, *Dawson*, 103 Nev. at 78, n.1, 734 P.2d at 221, n.1, it is the law of the case. *Hall*, 91 Nev. at 315, 535 P.2d at 797. We therefore will not address this contention.

Dawson also argues that the statements he gave at his apartment and his post-arrest statements required a voluntariness jury instruction. After Dawson was arrested, he was read his Miranda rights, acknowledged he understood those rights, signed the Miranda card, and made a statement. A detective testified as to that statement. An instruction regarding the "voluntariness" of a suspect's statement need be given only when "voluntariness" is at issue. *Laursen v. State*, 97 Nev. 568, 570, 634 P.2d 1230, 1231 (1981). Here, voluntariness was never raised as an issue. Hence, with respect to this claim, Dawson fails to show that counsel's performance fell below the reasonableness standard of *Strickland*.

*Failure to argue that jury selection and the infliction of the death penalty were racially motivated.*

Dawson contends that counsel failed to conduct sufficient *voir*

---

[6]Only the following parts of Jackson's testimony were read into the record: Dawson came into her apartment, pretended he was a police officer, and stated that "he was going to do the same thing to me he did with the girl at Caesar's Palace with a coke can."

*dire* of the jury when the State allegedly preempted the only potential black juror in violation of Batson v. Kentucky, 476 U.S. 79 (1986). At the time of trial, the United States Supreme Court had not yet decided *Batson.* Dawson cannot now claim that a failure to object under *Batson* was ineffective assistance even before *Batson* was decided.

Next, Dawson contends that he was the victim of discrimination and that his counsel was ineffective for not preventing the State from imposing the death sentence because he was black and the victim was white. A review of the record does not support Dawson's contention. Dawson offered no evidence that the death sentence was given in a discriminatory way or in a manner that transgresses any of his constitutional rights. *See* Williams v. State, 103 Nev. 227, 232, 737 P.2d 508, 511 (1987) (appellant offered no evidence to show Nevada's death penalty was unconstitutionally inflicted upon indigents and minorities). Therefore, Dawson has failed to show that counsel's performance fell below an objective level of reasonable assistance.

### *Failure to assert that the information did not apprise Dawson of the acts he allegedly committed.*

Finally, appellant alleges that his counsel failed to assert, by pre-trial writ, that the information did not comply with Nevada law in that it did not sufficiently inform appellant that he faced the charges of murder, sexual assault, and kidnapping. We reject this contention. We first note that at the preliminary hearing, the State attempted to amend the criminal complaint by adding the charges of rape and kidnapping. The district court denied the proposed amendment, and the information charged Dawson only with murder. Because Dawson was not charged with sexual assault or kidnapping, we need only address this issue as to the murder charge. The information provided in part:

> Robert J. Miller, District Attorney within and for the County of Clark, State of Nevada, in the name and by the authority of the State of Nevada, informs the Court:
> That HENRY DANIEL DAWSON, JR., the Defendant above named, on or about the 7th day of March 1985, at and within the County of Clark, State of Nevada, contrary to form, force and effect of statutes in such cases made and provided, and against the peace and dignity of the State of Nevada, did then and there, without authority of law and with malice aforethought, wilfully and feloniously kill LESLIE GAIL SHEPARD, a human being, by striking the said

LESLIE GAIL SHEPARD about the head with a deadly weapon, to wit: a soft drink canister.

The information heading provided "MURDER WITH USE OF A DEADLY WEAPON (Felony—NRS 200.010, 200.030, 193.165)."

Under our law, the information must specify the acts of criminal conduct. Sheriff v. Standal, 95 Nev. 914, 916, 604 P.2d 111, 112 (1979). An information charging murder is sufficient to charge murder in the first degree. Thedford v. Sheriff, Clark County, 86 Nev. 741, 745, 476 P.2d 25, 29 (1970). The information essentially followed the suggested form set forth in NRS 179.375.[7] The information properly charged Dawson with murder; it specifically explained the means by which Dawson allegedly killed Shepard, apprising him of the facts on which the State based the murder charge. Thereafter, it was the jury's duty to assign the degree of murder. Therefore, this claim of ineffective assistance of counsel fails under the *Strickland* test.

All of Dawson's contentions having failed to meet the test for ineffective assistance of counsel established in *Strickland,* we hereby affirm the order of the district court denying Dawson's petition for post-conviction relief.

---

[7]NRS 179.375 provides:

Information. An information may be in substantially the following form:

INFORMATION

STATE OF NEVADA ⎫
⎬ ss.
COUNTY.................................... ⎭

In the.................court. The State of Nevada against A. B., C. D. district attorney within and for the county of.................in the state aforesaid, in the name and by the authority of the State of Nevada, informs the court that A. B. on the......day of..................., A.D. 19...., at the county of..................., did (here state offense) against the peace and dignity of the State of Nevada.

C.D., District Attorney
or C.D., District Attorney, by H.M., Deputy.