865 P.2d 322 (1993)
The STATE of Nevada, Appellant,
v.
Rickey Edward LOVE, Respondent.
No. 23829.
Supreme Court of Nevada.
December 22, 1993.
Frankie Sue Del Papa, Atty. Gen., Carson City; Rex Bell, Dist. Atty., and James Tufteland and Eric G. Jorgenson, Deputy Dist. Attys., Clark County, for appellant.
McDonald & Ewing, Las Vegas, for respondent.

OPINION
SPRINGER, Justice:
Rickey Edward Love ("Love") was found guilty of first degree murder with the use of a deadly weapon. The State's case was based solely upon circumstantial evidence, and the key witness was a jailhouse informant. Defense counsel decided not to call any alibi witnesses on Love's behalf, and several of those potential witnesses later testified that they were not even contacted before the trial. After an evidentiary hearing, the district court held that respondent had received ineffective assistance of counsel, based upon a totality of the circumstances, emphasizing that counsels' failure to interview personally the potential alibi witnesses and counsels' subsequent decision not to have those witnesses testify at Love's trial prejudiced Love and constituted ineffective assistance of counsel. The State appeals the district court's determination.
We conclude that the district court did not err in granting respondent's petition for post-conviction relief.
On July 20, 1988, appellant State of Nevada filed an information charging Love with murder with the use of a deadly weapon in the death of Roderick Raynah Davis (Buck) which occurred on May 26, 1988. Prior to *323 trial, Love provided a list of alibi witnesses to his counsel who decided not to present any alibi witnesses due to perceived inconsistencies in the witnesses' testimony. The State's case was based entirely on circumstantial evidence and on the testimony of a single jailhouse informant. There were no eyewitnesses, and the murder weapon was never found.
After five days of trial, on October 21, 1988, the jury found Love guilty of first degree murder with the use of a deadly weapon. Love was sentenced to two consecutive terms of life imprisonment with the possibility of parole. Love then appealed his conviction to this court on the ground that the trial court erred in denying his motion to suppress certain hearsay testimony. This court dismissed his direct appeal on December 6, 1989. See Love v. State, (Order Dismissing Appeal, December 6, 1989, 105 Nev. 1039, 810 P.2d 333). On October 28, 1990, Love filed a petition for post-conviction relief, setting forth several assignments of error, including the denial of effective assistance of counsel, which the district court denied. On appeal, this court ordered that the issue be remanded to the district court for an evidentiary hearing. On August 21, 1992, an evidentiary hearing was held before Judge Jeffrey Sobel on the ineffective assistance of counsel issue. Judge Sobel concluded that Love had received ineffective assistance of counsel:
The totality of facts here: a) failure by relatively inexperienced counsel, b) to call potential witnesses, c) coupled with the failure to personally interview the witnesses so as to make an intelligent tactical decision, d) making an alleged "tactical decision" on a misrepresentation (apparently) of other witnesses' testimony, making an alleged "tactical decision" to not put on evidence when that decision seems illogical (one could have had the favorable testimony of State witnesses showing lack of motive and alibi witnesses) leads this Court to conclude in a case with little direct evidence of guilt that not only were counsel ineffective but that the errors of counsel were so serious as to "deprive the Defendant of a fair trial, a trial whose result is reliable" and therefore to prejudice him.
(Citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The State has appealed from this order.
The question of whether a defendant has received ineffective assistance of counsel at trial in violation of the Sixth Amendment is a mixed question of law and fact and is thus subject to independent review. Strickland, 466 U.S. at 698, 104 S.Ct. at 2070. This court reviews a claim of ineffective assistance of counsel under the "reasonably effective assistance" standard enunciated by the United States Supreme Court in Strickland and adopted by this court in Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984); see Dawson v. State, 108 Nev. 112, 115, 825 P.2d 593, 595 (1992). Under this two-prong test, a defendant who challenges the adequacy of his or her counsel's representation must show (1) that counsel's performance was deficient and (2) that the defendant was prejudiced by this deficiency. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.
"Deficient" assistance requires a showing that trial counsel's representation of the defendant fell below an objective standard of reasonableness. Id. at 688, 104 S.Ct. at 2064. If the defendant establishes that counsel's performance was deficient, the defendant must next show that, but for counsel's errors, the result of the trial probably would have been different. Id. at 694, 104 S.Ct. at 2068.
Under Strickland, defense counsel has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Id. at 691, 104 S.Ct. at 2066. Love argues that the following facts show a lack of reasonable investigation by his counsel: (1) one of Love's two attorneys testified that he had not personally contacted any of the witnesses prior to trial, but had instead relied on an investigator; (2) Love's other attorney could not remember whether he had contacted certain witnesses before or during trial, and (3) several witnesses stated that they had never been contacted. At least one of Love's several alibi witnesses, Stacey Dudley, was a credible witness and had never been convicted of a felony. Dudley testified at the *324 evidentiary hearing that she could have testified that she saw Love at a place some distance from the murder scene at the time the murder was committed. She spoke to an investigator prior to trial; however, she was never subpoenaed to testify. The district court heard the testimony of both Love's attorneys and the prospective alibi witnesses and came to a conclusion which is supported in the record; this court is ill-equipped to reweigh the credibility of these various witnesses on appeal. Given the paucity of the evidence against Love and the depth with which the district court explored this issue, we decline to disturb the judgment of the district court that counsels' failure to call any alibi witnesses on Love's behalf failed to meet an objective standard of reasonableness.[1]
The district court also based its ruling in part on the fact that Love's counsel were inexperienced. At the time of Love's trial, one of Love's attorneys was in his first year as an attorney with the public defender's office and had tried four criminal cases. He did not personally contact any witnesses. Love's other counsel had been with the public defender's office for two years and had tried approximately ten criminal cases. The district court properly considered the experience of Love's counsel in finding ineffective assistance of counsel in this case.
An error by trial counsel, even if professionally unreasonable, does not warrant setting aside a judgment of a criminal proceeding if the error had no effect on the judgment. Strickland, 466 U.S. at 691, 104 S.Ct. at 2066. Thus Strickland also requires that the defendant be prejudiced by the unreasonable actions of counsel before his or her conviction will be reversed. The defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694, 104 S.Ct. at 2068.
The Strickland court indicated that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Id. at 696, 104 S.Ct. at 2069. The weak record in this case makes us extremely hesitant to reject the district court's finding of ineffective assistance. Although circumstantial evidence alone may constitute sufficient evidence for a jury to convict a defendant, see Wilkins v. State, 96 Nev. 367, 609 P.2d 309 (1980), the only truly damaging testimony in this case came from a jailhouse informant and a hearsay statement made by some unknown stranger in the night. There were no eyewitnesses to the murder. There was no physical evidence linking Love to the murder. No murder weapon was found. No fingerprints or footprints traced Love to the scene. There was no apparent motive, as Love and Buck were friends. An alibi witness would have placed Love away from the scene of the murder. Even though the credibility of some of the alibi witnesses was subject to question, their testimony could have put a reasonable doubt in the jurors' minds sufficient to change the outcome of Love's trial. Accordingly, we agree with the district court that the failure of Love's counsel to call a single alibi witness or to explore the other rather obvious possible explanations for Buck's murder prejudiced Love and denied him his Sixth Amendment right to effective assistance of counsel.
The district court's order is affirmed.
YOUNG and SHEARING, JJ., concur.
ROSE, Chief Justice, with whom STEFFEN, Justice, joins, dissenting:
As set forth by the majority, this court reviews a claim of ineffective assistance of *325 counsel under the "reasonably effective assistance" standard enunciated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by this court in Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984). Under this standard, a defendant challenging the adequacy of his or her counsel's representation must show (1) deficient performance by counsel and (2) prejudice to the defendant by this deficiency. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. The Strickland Court cautioned that:
Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.
Id. at 689, 104 S.Ct. at 2065. Accordingly, "deficient" performance requires a showing that trial counsel's representation of the defendant fell below an objective standard of reasonableness. Id. at 688, 104 S.Ct. at 2064.
To eliminate the distorting results of hindsight, courts indulge a strong presumption that trial counsel's representation falls within the broad range of reasonable assistance. Id. at 689, 104 S.Ct. at 2065; Dawson, 108 Nev. at 115, 825 P.2d at 595. The defendant must overcome the presumption that the challenged action "`might be considered sound trial strategy'" under the circumstances. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). The presumption that trial counsel fully discharged his or her duties may only be overcome by "`strong and convincing proof to the contrary.'" Davis v. State, 107 Nev. 600, 602, 817 P.2d 1169, 1170 (1991) (quoting Lenz v. State, 97 Nev. 65, 66, 624 P.2d 15, 16 (1981)). It is clear from the record that the district court failed to indulge this presumption and similarly failed to judge counsel's performance under the objective standard enunciated in Strickland. Instead, the district court employed its own unique "totality of the circumstances" analysis, which appears to rely heavily upon hindsight and second-guessing.
Under Strickland, defense counsel has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). The Court did not define the duty further, but explained: "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91, 104 S.Ct. at 2066. The district court found fault with trial counsel's tactical decision not to put on alibi witnesses. Whether the tactical decision to refrain from putting on alibi witnesses at trial was an error constituting ineffective assistance of counsel depends upon whether Love's counsel conducted a proper investigation or reasonably determined that certain investigation was unnecessary. Legal and factual judgments erroneously made because of inadequate investigation may be deemed ineffective assistance of counsel. See Davis v. State, 107 Nev. 600, 601-02, 817 P.2d 1169, 1170 (1991). Therefore, the issue is whether Love's counsel had a sufficient basis for making the tactical decision not to call alibi witnesses at trial.
The record reflects that six people were listed on Love's alibi notice as potential alibi witnesses who would place Love at C's Cotton Club on the night of the murder. An amended alibi notice added the names of two females, one whose last name was unknown to Love. Two of the listed witnesses were family members, Myra Love and Mike Love. Love's two family members and a friend were under subpoena, together with another woman whose name counsel did not recall. Myra Love never appeared in court; counsel attempted but was unable to contact her during trial. Mike Love and Love's friend did appear, as well as the woman, who had not contacted defense counsel in response to the subpoena until after trial began. Counsel personally spoke to Myra Love, Mike *326 Love, and the friend. He did not recall if he spoke to the other woman.
Love's counsel, through an investigator, contacted or attempted to contact all of the other alibi witnesses whose names Love had provided to them. Additional witnesses, not provided on the alibi list, such as Stacey Dudley, were also contacted. The decision was made not to call the alibi witnesses because counsel's investigation revealed that the alibi testimony substantially conflicted with the favorable testimony of the State's witnesses and Love's own prior statements. Counsel thus concluded that the proposed alibi testimony would not aid Love's case. Counsel testified at the evidentiary hearing that he and his co-counsel built Love's defense around the perceived weaknesses in the State's case, which established Love's absence from the crime scene, friendship with the victim, and lack of motive. Counsel testified that if the alibi witnesses had been called, Love's defense would have been undermined due to the presentation of inconsistent evidence and issues of credibility. The record confirms that the State's witnesses testified favorably as anticipated by Love's counsel.
At the evidentiary hearing, the district court questioned both counsel regarding their tactical decisions as to each witness. Counsel testified that Myra Love's testimony placed Love at the club at 11:30 p.m. or midnight, whereas Love had stated he went to the club at about 2:15 a.m. The friend's timing was also a bit off, placing Love at the club at about 1:30 a.m. Most importantly, the friend had four prior felony convictions and appeared at trial in dirty, torn clothes. The reason Mike Love's and the woman's testimonies were thought to be unhelpful were similar time problems. Additionally, Mike Love had a prior felony record.
Rickey Love told his counsel that he arrived at C's Cotton Club at 2:00 a.m. or 2:30 a.m., which matched the statement he gave to the police. All of the alibi witnesses placed Love at the club well before that time. Counsel testified that it was Love himself who made the decision not to call his friend as a witness. State witnesses who were quite favorable to the defense said they were with Love up until 2:00 a.m.; therefore, counsel did not want to impeach their credibility.
At the evidentiary hearing, Mike Love testified that he arrived at C's Cotton Club around 1:00 a.m., and his younger brother Rickey was already there. He further testified that he never spoke to anyone from the public defender's office prior to trial. Both the friend who was subpoenaed and another listed alibi witness died sometime between Love's trial and the evidentiary hearing. Another proposed alibi witness testified at the evidentiary hearing that he was not contacted by defense counsel. He testified that he was at C's Cotton Club with Love from 6:00 p.m. until 4:00 a.m. on the night of the murder. At the time of the evidentiary hearing, this witness was in custody for grand larceny and had a prior conviction for attempted robbery in 1978. He testified that Love was a good friend of his, but that at the time of Love's trial, he "was off into my little thing. I was into drugs and stuff and I really didn't care, you know. I was too busy trying to get high." Myra Love was also in custody at the time of the evidentiary hearing.
Stacey Dudley, who had never been convicted of a felony, testified at the evidentiary hearing that she arrived at C's Cotton Club at 1:00 a.m. or 1:30 a.m. on the morning in question and that Love was already there. She stated that she danced with Love a few times, and he was still at the club when she left at 3:00 a.m. or 3:30 a.m. She spoke to an investigator prior to trial; however, she was never subpoenaed to testify. Another witness testified that Love was at C's Cotton Club when she arrived at midnight and that he was there at 3:00 a.m. or 3:30 a.m. when she left.
Love testified at the evidentiary hearing that he arrived at C's Cotton Club sometime "after 12:00, before 1:00," and that he had told the police he arrived there at 12:15 a.m. However, the record reflects that Love's statement to the police indicates that he told them Buck dropped him off at the Stop `n Shop at about 2:15 a.m. and then Love went to C's Cotton Club.
*327 The evidence presented at the evidentiary hearing establishes that counsel made a reasonable investigation under the standards established in Strickland. The district court incorrectly applied its own unique standard instead of the Strickland standard in ruling that Love was denied effective assistance of counsel because his counsel used an investigator instead of personally interviewing all of the alibi witnesses. The potential alibi witnesses who were not interviewed by counsel were contacted by an experienced investigator who provided counsel with reports of the interviews he had with the witnesses. The district court found that defense counsel should have personally interviewed all of the potential alibi witnesses instead of using an investigator. However, the use of an investigator is common practice and is encouraged. See Wilson v. State, 105 Nev. 110, 771 P.2d 583 (1989); Warner v. State, 102 Nev. 635, 729 P.2d 1359 (1986). In U.S. v. Weaver, 882 F.2d 1128 (7th Cir.), cert. denied, 493 U.S. 968, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989), the court stated:
If defense counsel is unable to personally complete these tasks, then counsel must seek the aid of others, including experts and investigators, to assist in the preparation and investigation. Of course, these duties are subject to the reasonable judgment of defense counsel in light of the facts of any particular case. It may be the case that defense counsel believes a particular avenue of investigation will be pointless. In that circumstance, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment."
Id. at 1138 (quoting Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)). Witnesses at the evidentiary hearing stated that they were not contacted by defense counsel. Defense counsel stated that they were contacted. Counsel also stated that the witnesses were told to be available by telephone and that four were subpoenaed. This is ultimately a credibility question. However, the fact that one witness appeared on the first day of trial, another appeared at the end of trial, and one other witness contacted defense counsel after trial would seem to indicate that they were contacted. Counsel's investigation was reasonable in that it revealed that the proffered testimony of the alibi witnesses would be inconsistent with Love's own statement and the testimony of the State's witnesses.
It is clear that Love's counsel knew prior to trial what the testimony would be from the alibi witnesses. This was not a case of oversight or inept lawyering. The witnesses all placed Love at C's Cotton Club much too early on the night in question to be credible or helpful. Because the State's witnesses' testimony was all quite favorable to Love, showing no animosity between Love and Buck, and also corroborated his own statement to the police, the determination to not call these alibi witnesses appears to have been a reasonable decision made after a reasonable investigation. The alibi witnesses would have contradicted other credible testimony that Love was with them until approximately 2:00 a.m.
The district court found that counsel's decision was unwise in that the alibi testimony would have placed Love away from the murder scene. This would be a significant error if they were credible alibi witnesses. However, the credibility quotient on the group was rather dismal. One friend, a four-time felon, now deceased, arrived in court in a disheveled state. Mike Love's testimony placed his brother at the club much too early, and he too was a convicted felon. Another friend was also a convicted felon who testified that he did not attend Love's trial because he was "into getting high." In hindsight, it would seem that Stacey Dudley might have been a good alibi witness, even though Love told the police he arrived at the club after 2:15 a.m. and Dudley testified Love was at the club at 1:00 a.m. or 1:30 a.m. Nonetheless, a review of the entire trial transcript shows that the State witnesses' testimony is very helpful to Love, showing a lack of motive.
Given the proper deference to be accorded trial counsel's tactical decisions, it was a sound tactical decision to not put on alibi witnesses that would undermine the State witnesses' testimony. Further, under Weaver, *328 a decision not to call a witness will not generally constitute ineffective assistance of counsel:
It would be a rare case where counsel's conscious decision not to call a witness would amount to constitutionally ineffective assistance. As we have stated in the past, "a tactical decision not to call a particular witness ..., if made after adequate investigation and based upon counsel's reasonable determination that damage to his client's case can thereby be avoided, cannot form the basis for a finding of ineffective assistance of counsel."
Weaver, 882 F.2d at 1139-40 (quoting United States v. Curtis, 742 F.2d 1070, 1074 (7th Cir.1984)). This court has stated that tactical decisions are virtually unchallengeable absent extraordinary circumstances. Howard v. State, 106 Nev. 713, 722, 800 P.2d 175, 180 (1990) (citing Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066-2067, 80 L.Ed.2d 674 (1984)). I find no extraordinary circumstances present in this case.
Further, Love cannot show prejudice. Once the defendant establishes that counsel's performance was deficient, the defendant must next show that, but for counsel's errors, the result of the trial probably would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Davis v. State, 107 Nev. 600, 601-02, 817 P.2d 1169, 1170 (1991). A defendant must also demonstrate that counsel's errors were so serious as to render the result of the trial unreliable or the proceeding fundamentally unfair. Lockhart v. Fretwell, ___ U.S. ___, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. Hindsight speculation regarding a tactical decision is not tantamount to proof that the result of the trial was unreliable or that the trial was fundamentally unfair.
Counsel's tactical decision not to call alibi witnesses at trial was made after adequate investigation and was based upon counsels' reasonable determination that damage to Love's case could thereby be avoided. This decision does not constitute ineffective assistance. Similarly, counsel's use of an investigator and counsel's relative inexperience do not constitute ineffective assistance under Strickland. The district court's "totality of the circumstances" analysis, made in hindsight, cannot form the basis for a finding of ineffective assistance of counsel. Accordingly, I would reverse the district court order granting Love's petition for post-conviction relief.
NOTES
[1] Although the district court did not rest its finding on this point, it also seems objectively unreasonable, or at least highly questionable, for defense counsel not to have tried to locate the phantom "June" prior to trial. Even the state's witnesses testified that Love and Buck were friends and that Love had no apparent motive to kill Buck. There is testimony in the record that June owed Buck $70.00 for "some dope." Love was going to help Buck track June down to enforce payment. There is further testimony that Love is a member of a gang known as the "Bloods." Perhaps this was a gang-related shooting, and Love is hesitant to testify against a fellow Blood. Or, perhaps he was the third man at the murder scene and intended to shoot June, Buck yelled "Rickey don't shoot," and Buck got shot by June. After considering the transcript of this trial, we find it hard to believe that Love's counsel did not explore this possible theory for the defense.